Case No. 24-12482

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

GREAT BOWERY, INC.,

*Plaintiff-Appellant*,

v.

CONSEQUENCE OF SOUND, LLC ; *et al*.,

*Defendants-Appellees*

---

On Appeal from the United States District Court
for the Southern District of Florida
Honorable Robin L. Rosenberg

---

**APPELLANT'S OPENING BRIEF**

---

DONIGER / BURROUGHS
Scott Alan Burroughs, Esq.
247 Water Street, First Floor
New York, New York 10038
scott@donigerlawfirm.com
Telephone: (310) 590-1820

*Counsel to Plaintiff-Appellant Great Bowery, Inc.*

## **APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

In compliance with Eleventh Circuit Rule 26.1-1 – 26.1-4, Appellant Great Bowery, Inc. identifies all attorneys, persons, associations of persons, firms, partnerships, or corporations known by Appellant to have an interest in the outcome of this case.

1. Anderson J. Duff

2. Annie Liebovitz

3. C. Cory Mauro

4. Consequence Media Group

5. Consequence Sound LLC

6. Great Bowery, Inc.

7. Robin L. Rosenberg, Judge

8. Scott Alan Burroughs

Appellant further certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

Respectfully submitted,

Dated: October 10, 2024     By:     */s/ Scott Alan Burroughs*
Scott Alan Burroughs, Esq.
DONIGER / BURROUGHS
*Attorneys for Plaintiff-Appellant*
*Great Bowery, Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………...iii

I.    INTRODUCTION AND STATEMENT OF ISSUES………..………...1

II.   DISCLOSURE STATEMENT………………….....................................1

III.  ORAL ARGUMENT STATEMENT..…………………………………1

IV.   JURISDICTIONAL STATEMENT………………………………….2

V.    SUMMARY OF THE ARGUMENT…………………………………..2

VI.   STATEMENT OF THE CASE…………….…………………………..3

VII.  STANDARD OF REVIEW………………………………………….5

VIII. ARGUMENT…………………………………………………………..6

A. Bowery has standing……………………………………………8

    1.  The Agreement conveyed an exclusive right………………..9

    2.  The district court violated the divisibility principle………...14

    3.  *Creative*, *Appalachian*, and *Viesti* are distinguishable……...20

    4.  The enumerated Section 106 rights are not exclusive………21

    5.  Bowery's right to receive royalties renders them owners
       of a beneficial right……………………………………………24

    6.  Consequence cannot challenge Bowery's standing………...29

B. Leibovitz's request to intervene should have been granted…………31

IX.    CONCLUSION……………………………………………………….....33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                           **Pages(s):**

*Alabama v. Bozeman*,

    533 U.S. 146, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001) ...................................... 32

*Althin CD Med., Inc. v. W. Suburban Kidney Ctr.*,

    874 F.Supp. 837 (N.D. Ill.1994) ........................................................... 19

*Am. Broad. Cos. v. Aereo*,

    134 S.Ct. 2498 (2014) ........................................................................ 6

*Bennett v. Spear*,

    520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) ...................................... 33

*BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*,

    706 F. App'x 521 (11th Cir. 2017*)* ....................................................... 29

*CBS Broad., Inc. v. EchoStar Commc'ns Corp.*,

    2003 WL 27387389 (S.D. Fla. Apr. 1, 2003) ...................................... 30

*Celotex Corp. v. Catrett*,

    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ......................................... 6

*Cortner v. Israel*,

    732 F.2d 267 (2d Cir. 1984) ........................................................... 27, 28

*Coventry First, LLC v. McCarty*,

    605 F.3d 865 (11th Cir. 2010)...................................................................... 6

*Creative Photographers, Inc. v. Julie Torres Art, LLC*,

    2023 WL 2482962 (N.D. Ga. Mar. 13, 2023)........................................ 21

*Crown Awards, Inc. v. Disc. Trophy & Co.*,

    564 F. Supp. 2d 290 (S.D.N.Y. 2008)...................................................... 7

*Davis v. Blige*,

    505 F.3d 90 (2d Cir. 2007)........................................................................ 19

*Diversey v. Schmidly*,

    738 F.3d 1196 (10th Cir. 2013).............................................................. 11

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,

    870 F.3d 978 (9th Cir. 2017)............................................................. 15, 28

*Duthie v. Rin, Inc.*,

    2022 WL 2199828 (C.D. Cal. Feb. 17, 2022)..................................... 31

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*,

    697 F.2d 27 (2nd Cir.1982)...................................................................... 29

*Essex Music, Inc. v. ABKCO Music & Records, Inc.*,

    743 F.Supp. 237 (S.D.N.Y. 1990)......................................................... 19

*Firebaugh Canal Co. v. United States*,

    203 F.3d 568 (9th Cir. 2000)................................................................. 33

*Fox Film Corp. v. Doyal*,

    286 U.S. 123, 52 S.Ct. 546, 76 L.Ed. 1010 (1932).............................. 13

*Great Bowery Inc. v. Consequence Sound LLC*,

    2024 WL 3291101 (S.D. Fla. July 2, 2024)................................... 8, 9, 11, 16, 32

*Harper & Row Publishers, Inc. v. Nation Enterprises*,

    471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985).................................... 10

*Hennepin Cnty. v. Fed. Nat. Mortg. Ass'n*,

    742 F.3d 818 (8th Cir. 2014)................................................................. 32

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,

    118 F.3d 199 (4th Cir. 1997)................................................................. 13

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*,

    70 F.3d 96 (11th Cir. 1995).................................................... 8, 29, 30

*In re Tennyson*,

    611 F.3d 873 (11th Cir. 2010)................................................................. 32

*John Wiley & Sons, Inc. v. DRK Photo*,

    882 F.3d 394 (2d Cir. 2018)................................................................. 25

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,

617 F.3d 1146 (9th Cir. 2010).........................................................................30, 31

*Latimer v. Roaring Toyz, Inc.*,

601 F.3d 1224 (11th Cir. 2010)..............................................................................5

*LeMay v. U.S. Postal Serv.*,

450 F.3d 797 (8th Cir. 2006)................................................................................32

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,

523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998)...........................................32

*Lunkenheimer Co. v. Pentair Flow Control Pac. PTY Ltd.*,

2014 WL 4450034 (S.D. Ohio Sept. 10, 2014) ............................................24, 25

*Mach Mining, LLC v. Equal Employment Opportunity Commission*,

575 U.S. 480, 135 S. Ct. 1645, 191 L. Ed. 2d 607 (2015)...................................33

*Matthew Bender & Co., Inc. v. West Pub. Co.*,

240 F.3d 116 (2d Cir. 2001)...................................................................................7

*Mayer v. Chesapeake Ins. Co.*,

877 F.2d 1154 (2d Cir.1989).................................................................................27

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,

795 F.3d 997 (9th Cir. 2015).....................................................................16, 17, 18

*Morales v. Quintel Ent., Inc.*,

    249 F.3d 115 (2d Cir. 2001)................................................................... 27

*N.Y. Times Co. v. Tasini*,

    533 U.S. 483, 121 S.Ct. 2381, 150 L.Ed.2d 500 (2001)...................................... 12

*National Car Rental v. Computer Associates*,

    991 F.2d 426 (8th Cir.1993).................................................................. 13

*Original Appalachian Artworks, Inc., v. Schlaifer Nance & Co.*,

    679 F. Supp. 1564 (N.D. Ga. 1987) ............................................................ 20, 21

*Parker v. Hinton*,

    2023 WL 370910 (6th Cir. Jan. 24, 2023) ........................................................ 27

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,

    803 F.Supp.2d 409 (E.D. Va. 2011).............................................................. 24

*Roberts v. Gordy*,

    359 F. Supp. 3d 1231 (S.D. Fla. 2019) ............................................................ 25

*SA Music, LLC v. Amazon.com, Inc.*,

    2020 WL 3128534 (W.D. Wash. June 12, 2020).................................................. 22, 23

*Saregama India Ltd. v. Mosley*,

    635 F.3d 1284 (11th Cir. 2011)................................................................... 8

*Silberman v. Innovation Luggage, Inc.*,

    2003 WL 1787123, fn. 5 (S.D.N.Y. Apr. 3, 2003) ............................................... 27

*Smith v. Casey*,

    741 F.3d 1236 (11th Cir. 2014)............................................................................. 25

*Stewart v. Abend*,

    495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990)...................................... 12

*TrendTex Fabrics, Ltd. v. Bonnie Brown Designs, Inc.*,

    2023 WL 4704008 (S.D. Fla. July 24, 2023)....................................................... 19

*Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*,

    595 U.S. 178 (2022) ......................................................................................... 6, 32

*United States v. Kahn*,

    5 F.4th 167 (2d Cir. 2021).................................................................................... 33

*Vestron, Inc. v. Home Box Off., Inc.*,

    1987 WL 123012 (C.D. Cal. Nov. 20, 1987)....................................................... 32

*Viesti Assocs., Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*,

    2015 WL 585806 (D. Colo. Feb. 11, 2015) ......................................................... 20

*Wilchombe v. TeeVee Toons, Inc.*,

    555 F.3d 949 (11th Cir. 2009)................................................................................ 5

*Williams v. Bd. of Regents of Univ. Sys. of Ga.*,

  477 F.3d 1282 (11th Cir. 2007) .............................................................. 6

*World Thrust Films, Inc. v. Int'l Family Entm't, Inc.*,

  1996 WL 605957, 1996 U.S. Dist. LEXIS 16631 at *11 (S.D. Fla. Aug. 1, 1996)

  .................................................................................................................. 19

**Statutes:**

17 U.S.C. § 101 .............................................................................. 2, 23

17 U.S.C. § 106 ...................................................................... 2, 9, 10, 20

17 U.S.C. § 106(1) ............................................................................... 10

17 U.S.C. § 106(1), (3), (5) ................................................................. 10

17 U.S.C. § 106(3) ............................................................. 10, 11, 12, 13

17 U.S.C. § 106(5) ............................................................................... 10

17 U.S.C. § 201(d)(2) .......................................................................... 14

17 U.S.C. § 501 ......................................................................... 6, 7, 15

17 U.S.C. § 501(b) ............................................. 1, 2, 3, 6, 7, 8, 24, 31, 32

28 U.S.C. § 1291 ................................................................................... 2

28 USCA § 1331 ................................................................................... 2

**Rules:**

Fed. R. App. P. 32(a)(5) ...................................................................... 35

Fed. R. App. P. 32(a)(6)..............................................................35

Fed. R. App. P. 32(f)...................................................................35

Fed. R. Civ. P. 24(a)(1)...............................................................31

Fed. R. Civ. P. 56(c)...............................................................5, 6

## **Other Authorities:**

H.R. Rep. No. 94-1476 (1976)..................................................14, 25

Peter S. Menell, *In Search of Copyright's Lost Ark: Interpreting the Right to Distribute in the Internet Age*, 59 J. Copyright Soc'y U.S.A. 1 (2011) ..............11

## I.     INTRODUCTION AND STATEMENT OF ISSUES

The district court erred in concluding that Plaintiff and Appellant Great Bowery, Inc. lacked standing to pursue the copyright infringement claims at issue. It further erred by refusing to allow Annie Leibovitz to join the action upon her application to do so.

This appeal should thus be granted because:

1.     The district court misconstrued what constitutes a "legal or beneficial owner of an exclusive right under copyright" as set forth in 17 U.S.C. § 501(b);

2.     The district court refused to "permit the intervention" of Leibovitz in the case as is required by 17 U.S.C. § 501(b); and

3.     Third-party infringers lack standing to challenge an agreement transferring copyrights when the parties to the transfer agreement are in accord.

As set forth below, each of these errors independently requires reversal.

## II.     DISCLOSURE STATEMENT

No parent corporation or publicly held corporation owns 10% or more of Appellant's stock.

## III.     ORAL ARGUMENT STATEMENT

Appellant respectfully requests oral argument on the issues raised herein.

## IV. JURISDICTIONAL STATEMENT

This court has jurisdiction over the claims at issue under 28 USCA § 1331 because they arise under the Copyright Act, 17 U.S.C. § 101 *et seq*. This court has jurisdiction over this appeal under 28 U.S.C. § 1291 because it is an appeal of a final judgment.

## V. SUMMARY OF THE ARGUMENT

The lower court's rulings should be reversed because they clash with the Copyright Act's text and intent. The Court's denial of Great Bowery, Inc.'s ("Bowery") Motion for Leave to File an Amended Complaint and the Court's granting of Defendants' Motion for Summary Judgment each constituted reversible error. Doc. 29 at 1 (App. II at 99); Doc. 45 at 1 (App. VI at 624).

Bowery has standing to bring the claims at issue because it is both the legal and beneficial owner of exclusive 17 U.S.C. § 106 rights in the works at issue and has the exclusive right to authorize third parties to exercise 17 U.S.C. § 106 rights. Doc. 31 at 9, 31-5 at 70 (App. III at 111, 218-19). Only one of the foregoing is required – to have standing a plaintiff must be a legal rights owner, a beneficial rights owner, *or* have the exclusive right to authorize third parties to exercise exclusive rights. Bowery had all three. In finding otherwise, the lower court applied an erroneous definition of what constitutes a "legal or beneficial owner of an exclusive right under copyright" under 17 U.S.C. § 501(b).

The lower court also should have granted the motion through which Annie Leibovitz sought to intervene in the case as a plaintiff (which would have mooted any standing concerns). Per 17 U.S.C. § 501(b), an artist who seeks to intervene in a copyright case affecting her interests "shall" be allowed to do so.

Finally, when an artist and an agency agree that the agency has standing to enforce and protect an artist's rights, and sign an agreement establishing as much, a third-party infringer cannot evade liability by challenging this understanding.

## VI. STATEMENT OF THE CASE

Annie Leibovitz is one of the world's most acclaimed photographers. Doc. 1 at 2-3 (App. I at 11-12). She has created some of history's most iconic photographs depicting a dizzying array of artists and personalities. *Id.* Like many top photographers, Leibovitz works with an agency to license, distribute, oversee, monetize, and control access to her work. Doc. 31-5 at 70, ¶1 (App. III at 218-19).

Her agency, Bowery, which also does business as Trunk Archive, entered into an "Artist Agreement" with Leibovitz ("Agreement") that grants Bowery the "**<u>exclusive</u>** worldwide right to license, market, and promote the Licensed Images (as defined below) for **all uses** in any and all media." *Id.* (emphasis added). Should Bowery grant a photography license to a website under the Agreement, Bowery distributes a copy of the relevant photograph to that website and directly receives payment from that website. *Id.* at ¶4. Of that payment, Bowery retains a significant

percentage for its own account and the remainder is tendered to Leibovitz. *Id.* at ¶4. Other than to one organization, Contract Press Images, and its owner, Robert Pledge, Leibovitz has no right to distribute her work. Doc. 31 at 9, 31-5 at 70 ¶1 (App. III at 111, 218-19).

After entering into the Agreement, Leibovitz signed an additional document to "confirm" that Bowery was authorized to enforce and protect her copyrights. Doc. 33-13 at 2 (App. IV at 490). Neither Leibovitz nor Bowery has ever contested the terms of the Agreement.

Bowery brought this lawsuit against Consequence Sound, LLC ("Consequence") after Consequence commercially exploited dozens of Leibovitz's photographs ("Photographs") without a license across a multitude of articles on its commercial website. Doc. 1 at 4-7, 1-1 at 8-24 (App. I at 13-16, 18-71). Consequence has been named in numerous infringement lawsuits and knows, or should have known, that it could not commercially exploit another's photograph without authorization or consent. Yet Consequence exploited Bowery-controlled Leibovitz works for commercial gain without Bowery's (or Leibovitz's) consent. *Id.* at 5-6; Doc. 31-5 at 174-75, 176-77 (App. III at 323-24, 325-26). This kind of unauthorized exploitation is copyright infringement. *Id.*

When Bowery filed the instant action, Consequence did not dispute that Leibovitz created the Photographs, that said Photographs were protected against

unauthorized use under the Copyright Act, or that it nevertheless exploited those Photographs without obtaining a license. Doc. 31-5 at 174-75, 176-77 (App. III at 323-24, 325-26); s*ee* Doc. 11 at 5 (App I at 77). Instead, it sought to evade liability for its infringement by claiming that Bowery lacked standing to bring suit over the Photographs that Leibovitz created despite the Agreement between Leibovitz and Bowery. Doc. 33-16 at 6-16 (App. IV at 506-16). The lower court credited this argument, focusing on a limited carve-out to Bowery's exclusive ownership in the rights in the Photographs that allows Leibovitz to provide those Photographs only to a single charitable organization, and adjudicated Bowery's claims in Consequence's favor. Doc. 45 at 1-7 (App VI at 624-30). This appeal was timely filed to challenge that decision.

## VII.  STANDARD OF REVIEW

The Eleventh Circuit reviews a district court's "grant of summary judgment *de novo*, considering all the evidence and factual inferences in the light most favorable to the non-moving party." *Latimer v. Roaring Toyz, Inc*., 601 F.3d 1224, 1232 (11th Cir. 2010), *citing Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 956 (11th Cir.2009). And under Fed.R.Civ.P. 56(c), a motion for summary judgment is properly granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." *Id.*, *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Courts "generally review the denial of a motion to amend a complaint for an abuse of discretion, but [they] review questions of law *de novo*." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010), *citing Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1291 (11th Cir. 2007) (internal citations omitted). Here, the question of law – whether Leibovitz had the legal right to intervene – should be reviewed *de novo* and decided in Bowery's favor.

## VIII. ARGUMENT

Bowery has standing under 17 U.S.C. § 501 to pursue the copyright claims at issue by virtue of the exclusive rights granted to it under the Agreement. Section 501 states that the "legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Bowery is certainly such an owner.

When interpreting the Copyright Act "we follow the text of the statute." *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 184 (2022) (citation omitted). Where its language is general rather than specific, courts "apply [that] highly general language in light of the statute's basic purposes." *Am. Broad. Cos. v. Aereo,* 134 S.Ct. 2498, 2511 (2014) (applying the Act). The Act's

"principal purpose" is to "encourage the origination of creative works by attaching enforceable rights to them." *Crown Awards, Inc. v. Disc. Trophy & Co.*, 564 F. Supp. 2d 290, 295 (S.D.N.Y. 2008), aff'd, 326 F. App'x 575 (2d Cir. 2009), *quoting Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001) (citation omitted). Depriving an artist's exclusive agency from addressing infringement of the exclusive rights granted to that agent when both the artist and agent agree that doing so is proper would allow infringers to evade liability even for admitted infringement, working *against* the basic purpose of the Act. Any interpretation of the Act should reflect that intent and favor artists' efforts to enforce their rights directly or through their exclusive agents.

The Copyright Act's text favors both Bowery's standing and Leibovitz's right to intervene. Section 501 states that the "legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Bowery is a legal, or at minimum a beneficial, owner of exclusive rights in the Photographs because Leibovitz granted those rights to Bowery, and it brought suit against Consequences for violation of those particular rights while Bowery owned them. And Section 501 further states that the court "**shall** permit the intervention, of any person having or claiming an interest in the copyright." *Id.* (emphasis added). Leibovitz is the

creator of the Photographs and would indisputably own the exclusive rights in the Photographs if they were not owned by Bowery, and thus the lower court was required to permit her intervention in the suit if it determined that Bowery lacked the necessary rights. The lower court thus erred in its application of both clauses.

A.    **Bowery has standing**

A plaintiff has standing to sue for violations of the Copyright Act if it is the legal or beneficial owner of an exclusive right to the copyrighted works at issue. *See Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc*., 70 F.3d 96, 99 (11th Cir. 1995); *see also Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 129091 (11th Cir. 2011) ("[O]nly the legal or beneficial owner of an 'exclusive right' has standing to bring a copyright infringement action in a United States court.") *quoting* 17 U.S.C. § 501(b).

The lower court found that Bowery lacked standing for two reasons, stating "the exclusive rights conveyed are not identical to any of the Six Exclusive Rights Conferred by Copyright" and that Leibovitz retained "for herself the right to use or deliver the photographs for any purpose ('for other endeavors') that Ms. Leibovitz 'deems of interest.'" *Great Bowery Inc. v. Consequence Sound LLC*, 2024 WL 3291101, at *2 (S.D. Fla. July 2, 2024) (citations omitted); Doc. 45 at 3 (App. VI at 626). The lower court also found that "Ms. Leibovitz may even grant third parties, at her own discretion, rights in the photographs." *Id.* However, the

Agreement conveyed to Bowery ownership of exclusive rights under copyright in the Photographs. And even if Leibovitz retained certain rights, it does not deprive Bowery of standing because Consequence's infringement violated exclusive rights held by Bowery, *not* Leibovitz.

1.      **The Agreement conveyed exclusive rights**

The Agreement vested Bowery with the exclusive right to distribute Leibovitz's works to every company and individual in the world other than one organization and its owner, neither of which have any involvement in this case. The Agreement stated that it was "exclusive[,] worldwide" and that it covered "all uses in any and all media." Doc. 31-5 at 70 ¶1 (App. III at 218-19). Thus, only Bowery had the exclusive right to display and distribute Leibovitz's work to Consequence and to authorize Consequence to reproduce, distribute, and display that work.

Displaying, reproducing and distributing a work are three of the exclusive rights set forth in 17 U.S.C. § 106. Consequence violated the Copyright Act by reproducing the Photographs and then displaying and distributing them to the public through its commercial website. The Court thus erred in finding a lack of standing on the grounds that Bowery's exclusive rights were "not identical to any of the Six Exclusive Rights Conferred by Copyright." *Great Bowery Inc.,* 2024 WL 3291101, at *2; Doc. 45 at 3 (App. VI at 626).

Crucially here, Section "106 of the Copyright Act confers a bundle of exclusive rights" to the copyright owner. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 546, 105 S. Ct. 2218, 2223, 85 L. Ed. 2d 588 (1985). This bundle includes separate and discrete rights of display, reproduction, and distribution. 17 U.S.C. § 106(1), (3), (5).[2] Notably, the statute states that "the owner of copyright under this title has the exclusive rights to do and to **_authorize_** any of the" rights set forth in 17 U.S.C. § 106 (emphasis added). Bowery thus had standing in two ways: it held the exclusive display and distribution rights **_and_** the exclusive right to authorize third parties to exploit *any* of the Section 106 rights, including the rights to reproduce, display, and distribute the works at issue.

The infringement at issue was Consequence's reproduction, display, and distribution of the Photographs. Only Bowery had the exclusive rights to display and distribute the Photographs to Consequence and to **_authorize_** Consequence to reproduce, display, and distribute the Photographs to the public via its website. Doc. 31-5 at 70 ¶ 1 (App. III at 218-19). Leibovitz did not have the right to do so

---

[2] Section 106(1) grants a copyright owner the exclusive right to "reproduce the copyrighted work in copies," Section 106(3) grants the exclusive rights "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending," and Section 106(5) grant the right "to display the copyrighted work publicly[.]" 17 U.S.C. §106(1), (3), (5).

per the Agreement's clear language. *See id.* And she hasn't claimed otherwise. Because Bowery did not authorize Consequence to display, reproduce, and distribute the Photographs, Consequence infringed Bowery's Section 106 rights.

The lower court's focus on whether the exact language of the Agreement was "identical to any of the Six Exclusive Rights Conferred by Copyright" was misplaced. *Great Bowery Inc.,* 2024 WL 3291101, at *2; Doc. 45 at 3 (App. VI at 626). There is no "language identicality" requirement and the right to license and market, both of which are set forth in the Agreement, necessarily incorporate the Section 106 right to "distribute" under any plain language interpretation. *See* 17 U.S.C. § 106(3) (noting exclusive right to "distribute copies or phonorecords of the copyrighted work[.]").

Indeed, Webster's defines "distribution" as "to market (a commodity)." Peter S. Menell, *In Search of Copyright's Lost Ark: Interpreting the Right to Distribute in the Internet Age*, 59 J. Copyright Soc'y U.S.A. 1, 54 (2011), *citing* Webster's Third New International Dictionary of the English Language, Unabridged 660 (Philip Babcock Gove ed., 1961, 1993). Notably, the "distribution" right's legislative history makes clear that the "actual distribution of an unauthorized copy" is not necessary for there to be a distribution. *Diversey v. Schmidly*, 738 F.3d 1196, 1202 (10th Cir. 2013), *citing* Peter S. Menell, In Search of Copyright's Lost Ark: Interpreting the Right to Distribute in the Internet Age, 59

J. Copyright Soc'y U.S.A. 1, 52–66 (2011). Thus, Bowery's right to offer the Photographs for distribution qualifies as an exclusive Section 106 right.

Because Bowery had the exclusive right "to market" the Photographs, it necessarily had exclusive rights to "distribute" the Photographs. It is settled that one of the exclusive Section 106 rights is "to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending [.]" 17 U.S.C. § 106(3). And distribution can occur electronically. *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 498, 121 S.Ct. 2381, 150 L.Ed.2d 500 (2001) (*Tasini* involved a computer database program that distributed copies of newspaper articles stored in its computerized database by selling copies of those articles through its database service.). Bowery marketed the works by distributing electronic copies to licensees, as was its exclusive right under the Agreement. *See* Doc. 31 at 10, 14-15 (App. III at 112, 116-17); Doc. 31-1 at 7 ¶48 (App. III at 140).

Bowery had not just the exclusive right to "market" but also the exclusive right to "license." To "license" is also to "distribute." The Supreme Court has at least twice held that the distribution right incorporates the right to "license" the work to third parties. *See Stewart v. Abend*, 495 U.S. 207, 220, 229, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) (copyright holders "hold[ ] a bundle of exclusive rights in the copyrighted work," including "the capacity [to] arbitrarily ... refuse to

license [to] one who seeks to exploit the work."); and *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127, 52 S.Ct. 546, 76 L.Ed. 1010 (1932) ("The owner of the copyright, if he pleases, may refrain from vending or licensing and content himself with simply exercising the right to exclude others from using his property."). Bowery's exclusive right to license the work was equivalent to the exclusive Section 106 right to distribute.

This equivalency becomes pellucid when considering the infringement at issue. An infringing "distribution" includes when "an unlawful copy" is disseminated "to the public." *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997), *citing* 17 U.S.C. § 106(3); *see National Car Rental v. Computer Associates*, 991 F.2d 426, 434 (8th Cir.1993); 2 Nimmer, § 8.11[A] at 8–137. Thus, when Consequence distributed unlawful copies of the Photographs to the public through its website, it violated Bowery's distribution right since "distributing unlawful copies of a copyrighted work does violate the copyright owner's distribution right and, as a result, constitutes copyright infringement." *Hotaling*, 118 F.3d at 203. Bowery had the exclusive right to control and authorize Consequence's distribution. Bowery thus owned the exclusive right necessary to bring the claims.

In sum, the Agreement conveyed to Bowery the "exclusive worldwide right" to distribute and authorize the distribution of the Photographs, and to bring claims

against all parties in the world other than Contact Press Images and its owner. Doc. 31-5 at 70 ¶1 (App. III at 218-19). Bowery thus had the sole and exclusive rights to distribute or authorize the reproduction and distribution of the Photographs. *See id.* Consequence's distribution and display of the Photographs infringed these rights. Bowery thus had standing to bring suit to address this infringement.

### 2. The district court violated the divisibility principle

The district court found that Bowery lacked standing because the Agreement permitted Leibovitz to "grant third parties, at her own discretion, rights in the photographs." Doc. 45 at 3 (App. VI at 626). This was error because rights granted under copyright law are divisible and it is irrelevant to the determination of Bowery's standing whether Liebowitz retained the right to grant *other* rights in the Photographs to parties *other* than Consequence.

The retention of one right from the Section 106 bundle – to allow one organization and its owner to use the work – does not make Bowery's rights any less exclusive as applied against the rest of the world. Any of the "exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred ... and owned separately." 17 U.S.C. § 201(d)(2). And Section 106's "bundle of rights" is one that that "may be subdivided **indefinitely**[.]" H.R. Rep. No. 94-1476, at 61 (emphasis added). Rights in a creative work can be subdivided via an assignment or, relevant here, an

exclusive license. *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 983 (9th Cir. 2017) (citation omitted).

Under the Copyright Act, "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement **of that particular right**[.]" 17 U.S.C. § 501 (emphasis added). Thus, if an author conveys an exclusive right to an agent to distribute her work to newspapers and to another agent to distribute her work to magazines, both of those rights are exclusive. And if a newspaper infringes, the first licensee has standing; conversely if a magazine infringes, the second licensee has standing. This is the divisibility principle. And because rights can be subdivided "indefinitely," they can be further subdivided so that an exclusive right is granted to sports magazines and another to nature magazines. And then divided among sports magazines that cover baseball and those that cover football. And so on.

Here, the right to distribute and display was subdivided between Leibovitz (who had the right to authorize only one organization and its owner to exploit the work) and Bowery (who had the right to authorize the rest of the world to do so). Bowery's Agreement states that it has the exclusive right to license "all" use of Leibovitz's work. Doc. 31-5 at 70 ¶1 (App. III at 218-19). This clearly sweeps within its ambit the right to display and distribute, both of which are "identical" Section 106 rights.

The district court ignored this divisibility principle in finding that a narrow retention of rights, which amounted to a single carve-out for an organization and its owner, destroyed exclusivity. It found that the agreement was not "exclusive" because Ms. Leibovitz "retain[ed] for herself the right to use or deliver the photographs for any purpose ("for other endeavors") that Ms. Leibovitz "deems of interest." *Great Bowery Inc.,* 2024 WL 3291101, at *2; Doc. 45 at 3 (App. VI at 626). But this is a misreading of the Agreement's appreciably more narrow language, which provides only that Leibovitz can "collaborate with or deliver" photography "to Robert Pledge and/or Contact Press Images for use in special projects or other endeavors Artist deems of interest." Doc. 31-5 at 70 ¶1 (App. III at 219). This is not a retained right to use the photographs for "any purpose," but only endeavors by Contact Press Images and/or its owner. *Id.* And it only allows delivery and collaboration, *neither* of which are identical Section 106 rights. *See id.* The right to authorize distribution and display is exclusively Bowery's. At most, Leibovitz had a limited carve-out to work with a charitable organization.

The court's finding of no standing based on this narrow retention of rights "runs contrary to the divisibility principle embodied by the 1976 Act, and to the bulk of the caselaw and commentary in this field." *Minden Pictures, Inc. v. John Wiley & Sons, Inc*., 795 F.3d 997, 1004 (9th Cir. 2015) (applying the divisibility principle and rejecting the defendant's standing challenge because the plaintiff

held worldwide exclusive rights despite the granting artist retaining limited rights in the photographs). Moreover, it is "inconsistent with the notion that, under the 1976 Act, a single copyright, or right thereunder, may be divided between parties, with each co-owner entitled to sue to protect his or her interest in the right." *Id.*

As the Ninth Circuit explained, "when a licensee has been granted rights vis-à-vis the world—even if he or she shares those rights with another party, including the owner of the copyright—we see nothing in the Copyright Act that requires us to deem such an arrangement a mere 'nonexclusive license' insufficient to give rise to standing to sue." *Minden Pictures,* 795 F.3d at 1004. That reasoning applies with equal force here as Bowery is the "sole and exclusive agent and representative with respect to the Licensing of any and all uses" of the Photographs. *Id.* at 1005. Leibovitz could bring claims against Contract Press Images or Robert Pledge, but only Bowery can bring claims against the rest of the world, which includes Consequence.

The fact that Leibovitz "retained some limited degree of authority to grant licenses [herself] does not eliminate [Bowery's] interest in the copyright as the sole entity to act as the photographers' licensing agent. It merely means that *both* [Bowery and Leibovitz] can prevent those third parties who have not received permission to use the Photographs from using them. To hold otherwise would be inconsistent with the divisibility principle embodied by the 1976 Act." *Minden*

*Pictures*, 795 F.3d at 1005. As such, Bowery had the right to prevent and address Consequence's infringement in court.

A prominent licensing treatise makes the same point, noting that "one who takes an 'exclusive' license subject to a preexisting license may lack true exclusivity, but nonetheless possesses the legal right to exclude third parties (other than the existing licensee) ... and, thus, has ... standing to sue for infringement." 2 Roger M. Milgram, Milgram on Licensing § 15.08. Here, even if Leibovitz had a prior agreement with Contract Press Images or its owner, Bowery's Agreement still gives it the legal right to exclude all others – including, crucially, Consequence – from exploiting Leibovitz's photography.

To deny standing here is also "inconsistent with common sense" because if Leibovitz had issued the licenses directly to Consequence she would have been in violation of her Agreement with Bowery. *Minden Pictures*, 795 F.3d at 1005. Thus, there is "no reason why, having appointed [Bowery] to manage the commercial use of their photographs in the first instance as their licensing agent, the photographers should not also be able to rely on [Bowery] to protect and defend the licenses that it has issued on their behalf." *Id.* Bowery had standing to protect Leibovitz's copyrights and the licenses that it had issued for Leibovitz's photography.

Troublingly, under the lower court's ruling it could be the case that **no** party possesses standing to bring the copyright claim at issue because once "an owner or exclusive licensee exclusively licenses away those rights to another, the licensor loses standing to sue for infringement of those rights, and only the licensee has standing to sue." *TrendTex Fabrics, Ltd. v. Bonnie Brown Designs, Inc*., 2023 WL 4704008, at *5 (S.D. Fla. July 24, 2023), *citing World Thrust Films, Inc. v. Int'l Family Entm't, Inc*., 1996 WL 605957 at *4, 1996 U.S. Dist. LEXIS 16631 at *11 (S.D. Fla. Aug. 1, 1996), *citing* 3 M. NIMMER AND D. NIMMER, NIMMER ON COPYRIGHT § 12.02[B], p.12-54 - 12-55 (1996). Thus, because Leibovitz has conveyed to Bowery the exclusive right to distribute and license her work and to authorize third parties to distribute and display her work (other than one charitable organization and its owner) she may have lost standing to "sue for infringement of those rights" by Consequence. *Id.* This is an untenable result.

Notably, the "exclusive licensee of an interest is the only one who may exercise that right." *Davis v. Blige,* 505 F.3d 90, 100 n. 10 (2d Cir.2007); *see also Essex Music, Inc. v. ABKCO Music & Records, Inc.,* 743 F.Supp. 237, 242 (S.D.N.Y.1990) (emphasis omitted) (citation omitted); *Althin CD Med., Inc. v. W. Suburban Kidney Ctr.,* 874 F.Supp. 837, 842 (N.D.Ill.1994), *citing Essex Music,* 743 F.Supp. at 242. Here, Bowery certainly has standing. But with the trial court

finding Bowery to lack standing, it is unclear who *would* have standing to bring the claims at issue.

The trial court's finding that Bowery lacked standing should be reversed.

### 3.  *Creative*, *Appalachian*, and *Viesti* are distinguishable

The three non-precedential cases primarily relied on by the lower court are readily distinguishable, based on incorrect legal reasoning, or both.

First, in *Viesti Assocs., Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, the agreements at issue stated that the agency would be a "**non**-exclusive agent and representative in respect of the leasing and sale of said materials throughout the world." 2015 WL 585806, at *2 (D. Colo. Feb. 11, 2015)(emphasis added). The Agreement, in contrast, is **exclusive** and this renders *Viesti* inapplicable.

In *Original Appalachian Artworks, Inc., v. Schlaifer Nance & Co.*, the court found that the right to authorize others to use the copyright at issue was not a § 106 right. 679 F. Supp. 1564, 1572 (N.D. Ga. 1987). That finding was incorrect since Section 106 explicitly states that the rights may be directly exploited or exercised by "authorizing" others to so exploit the work. 17 U.S.C. 106 ("the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:[…]).

*Original Appalachian* is also distinguishable because the plaintiff there failed to point to "a specific § 106 right" and instead argued that "the expansive

language describing the [§] 106 rights" was broad enough to include unnamed exclusive rights. 679 F. Supp. at 1572. Here, the Agreement clearly states that it applies to "all uses in any and all media." Doc. 31-5 at 70 ¶1 (App. III at 218-19). Further, it invokes the distribution right as well as the right to authorize the distribution and display of the Photographs (as discussed, *infra*). *See id.* Thus, Bowery has established that, other than the narrow carve-out, it has the sole right to display and distribute and to authorize third parties to do so. *Appalachian* is thus distinguishable.

Finally, in *Creative Photographers, Inc. v. Julie Torres Art, LLC*, the agreement had no language transferring rights and instead only appointed the plaintiff as an agent. 2023 WL 2482962, at *7 (N.D. Ga. Mar. 13, 2023). That is not the case here, as the Agreement expressly granted Bowery the right to control and authorize "all" uses. Doc. 31-5 at 70 ¶1 (App. III at 218-19). *Creative Photographers* also addressed the "derivative work" right, which further distinguishes the case. 2023 WL 2482962, at *7. In contrast, Bowery obtained the right to control "all" uses including distribution and display and there is no need to invoke the "derivative work" right. Doc. 31-5 at 70 ¶1 (App. III at 218-19).

### 4. The enumerated Section 106 rights are not exclusive

Even if the Court finds Bowery's exclusive rights to be outside of those expressly enumerated Section 106, there is nothing in the statute to indicate that

those enumerated are exclusive. As such, courts recognize Section 106 rights that are unenumerated in the statute. For example, a "leading copyright expert, the U.S. Copyright Office, and international treaties (to which the United States is a signatory), conclude that the "act of making available sound recordings for downloading by the public through file-sharing networks suffices to show actionable copyright infringement." *SA Music, LLC v. Amazon.com, Inc*., 2020 WL 3128534, at *3 (W.D. Wash. June 12, 2020), *citing* NIMMER ON COPYRIGHT § 8.11[B][4][d](2013); see U.S. COPYRIGHT OFFICE, THE MAKING AVAILABLE RIGHT IN THE UNITED STATES at p. 74 (Feb. 2016) ("Copyright Office Report") ("In general, where a party offers members of the public access to a work in the form of a download, the offer implicates the right of distribution.... the statutory language, context, and legislative history all indicate that Congress intended to reserve to copyright owners the right to determine whether and how their works are made available to the public in copies, including digital files[.]"); *see also* World Intellectual Property Organization Internet Treaties ("WCT") ("[A]uthors of literary and artistic works shall enjoy the exclusive right of authorizing any communication to the public of their works, by wire or wireless means, including the making available to the public of their works in such a way that members of the public may access these works from a place and at a time individually chosen by them.") WCT, art. 8 at p. 13.2. "Making

available" may not be "identical" to any of the enumerated Section 106 rights but it is an exclusive right nonetheless. *Id.*

Here, Bowery had the exclusive right to market, license and distribute Leibovitz's photography. While the distribution right is expressly enumerated in Section 106, that section also embraces the right to market and license. At a minimum, the right to market and license aligns with the right to make the works available to the public.

Moreover, the right to market and license are exclusive to the artist and thus in accord with the other Section 106 rights. The Copyright Act defines "publication" as either "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending" **or** the "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." 17 U.S.C. § 101 ("Publication" definition). Bowery's marketing and licensing of the Photographs were both "offering to distribute" the Photographs and distributing the Photographs. There is thus no reason to conclude, particularly when invoking the intent of the Copyright Act, that licensing, marketing, promoting or otherwise authorizing the use of a work would not fit within the purview of Section 106.

**5.** **Bowery's right to receive royalties renders it the owner of a beneficial right**

In the alternative, Bowery is, at minimum, a beneficial owner of an exclusive copyright. "The legal or **beneficial** owner of an exclusive right under a copyright is entitled […] to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b)(emphasis added). The definition of "beneficial ownership," as used in this Section, has not been fully ventilated by the courts but would apply to Bowery here. Black's Law Dictionary defines "beneficial owner" as "[o]ne recognized in equity as the owner of something because use and title belong to that person, even though legal title may belong to someone else .... Also termed equitable owner.... A person or entity who is entitled to enjoy the rights in a patent, trademark, or copyright even though legal title is vested in someone else." *Lunkenheimer Co. v. Pentair Flow Control Pac. PTY Ltd*., 2014 WL 4450034, at *11 (S.D. Ohio Sept. 10, 2014), *quoting* Black's Law Dictionary 1214 (9th ed. 2009). Thus, "under the general definition of "beneficial owner," such an entity has most to all of the traditional property rights of the owner, except for actual legal title to the property." *Id.*, *quoting Pfizer, Inc. v. Teva Pharms. USA, Inc*., 803 F.Supp.2d 409, 425 (E.D.Va.2011).

Bowery, while without title, has most, if not all, of the traditional property rights of the owner, including the right to enter into contracts regarding the work, receive payments related to the work, distribute the work, authorize third parties to display and distribute the work, and receive payment for the use of the work. *See* Doc. 31-5 at 70 ¶1, 4 (App. III at 218-19). In fact, Bowery's rights are superior to Leibovitz's in this regard, as aside from a single potential licensee, only Bowery may distribute and authorize the distribution of the work, and only Bowery may receive direct payment for use of the work.

A scant few courts have addressed the issue of what constitutes a "beneficial owner." Most cite the sole example "set forth in the legislative history of the Copyright Act, which describes the term 'beneficial owner' as 'includ[ing], for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees.'" *Roberts v. Gordy*, 359 F. Supp. 3d 1231, 1247 (S.D. Fla. 2019), *quoting John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 414 (2d Cir. 2018), *quoting* H.R. Rep. No. 94-1476, at 159. And the Eleventh Circuit has found beneficial ownership when "an author who parts with legal title to the copyright in exchange for royalties." *Id.* at *1248, *citing Smith v. Casey*, 741 F.3d 1236, 1242 (11th Cir. 2014) (applying the definition of "beneficial owner" found the Copyright Act's legislative history and holding that plaintiff was a beneficial owner because he "assigned his rights to the musical

- 25 -

composition in exchange for royalties"). Thus, a party that lacks ownership but has an exclusive right to collect payment qualifies as a "beneficial owner."

Moreover, it cannot be the case that the *single* example set forth in the Copyright Act's legislative history is the *only* context in which one can be a beneficial owner. This is particularly true given the dictionary definition of "beneficial owner" and the most straightforward reading of the term, which is one with a monetary interest in the work. The example in the Copyright Act's legislative history describes a copyright owner who transfers her copyright ownership to a third party while retaining the right to be paid for the work's exploitation. In other words, a party that does not own the copyright, but receives payment tied directly to the copyright's exploitation, is a beneficial owner. That is the exact case here. Bowery does not own the copyright but receives payment tied directly to its exploitation. In music cases, royalties flow when the songs are played. In photography cases, license fees flow when the photograph is displayed. Bowery is a beneficial owner because license fees flow to Bowery when Leibovitz's photographs are licensed, distributed, and displayed.

This aligns with statutory construction in other areas of the law, where the definition generally turns on whether one holds a financial interest. A financial interest is thus a beneficial interest. For example,

> The Exchange Act does not define the term "beneficial owner" as it is used in § 16(b). Absent a statutory definition, a substantial body of case law developed over the years that filled in the deficiency, defining beneficial ownership by reference to whether the insider trading in company stock obtained a **direct pecuniary benefit** from the purchase and sale of the securities in question.

*Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 122 (2d Cir. 2001) (emphasis added),

*citing, generally, Mayer v. Chesapeake Ins. Co.*, 877 F.2d 1154, 1158–62 (2d

Cir.1989) (reviewing cases). Here, Bowery has a direct pecuniary interest in the

distribution and display of the photography at issue. It is thus a beneficial owner.

Courts hold that even without title, the holder of an exclusive, pecuniary

right has "standing to sue as beneficial owner of that right, based on royalties

received or other indicia of control." *Silberman v. Innovation Luggage, Inc.*, 2003

WL 1787123, at *7, fn. 5 (S.D.N.Y. Apr. 3, 2003). Here, Bowery controlled the

copyrighted works and received payments tied to their distribution, display, and

reproduction, all of which are exclusive Section 106 rights. *See* Doc. 31-5 at 70 ¶1,

4 (App. III at 218-19).

A party's exclusive "right to receive royalties makes them beneficial owners

of the copyright and gives them standing to sue." *Parker v. Hinton*, 2023 WL

370910, at *3 (6th Cir. Jan. 24, 2023). Allowing a beneficial owner to enforce a

copyright protects a person from having his or her equitable interest in a copyright

"diluted or lessened by a wrongdoer's infringement." *Cortner v. Israel*, 732 F.2d

267, 271 (2d Cir. 1984). A beneficial interest is one that derives its value directly

from another's use of an exclusive right, such that the interest is necessarily

"diluted" by infringement. *See id.* Bowery's interest in receiving license fees

would be greatly diluted if infringement like that committed by Consequence here

went unchecked.

Bowery, "as the agency exclusively authorized to license photographs on

behalf of [Leibovitz,] has a significant interest in the way the photographs it

licenses are used that should be sufficient to confer standing." *DRK Photo v.*

*McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 991 (9th Cir. 2017) (J.

Berzon, concurring). That interest arises from Bowery's "position as the licensing

agent." *Id.* This approach aligns with the Copyright Act's intent because it removes

"what would otherwise be a significant practical disadvantage in seeking to protect

a copyrighted work[.]" *Id.* Bowery received a significant portion of any revenues

derived from its licensing and distribution of Leibovitz's photography, including

the Photographs. Doc. 31-5 at 70 ¶4 (App. III at 219). This right is "diluted" by

infringement, including Consequence's display of the work without payment to

Bowery of the required license fee. *Cortner*, 732 F.2d at 271.

Bowery is the only party that can distribute the Photographs to third parties

for purposes of further distribution. *See* Doc. 31-5 at 70 ¶1 (App. III at 218-19).

The copyright violation at issue here – Consequence's display and distribution of

the Photographs – trespassed on Bowery's exclusive rights to distribute and authorize the distribution and display of the Photographs. Bowery thus owns a beneficial right and had standing to bring the copyright claims.

### 6. Consequence cannot challenge Bowery's standing

Courts have repeatedly found that strangers to copyright transfer agreements lacked standing to challenge those transfers when no party to the transfer disputes the transfer's effect. This Circuit, for example, has held that "where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement." *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995), *citing Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,* 697 F.2d 27, 36 (2nd Cir.1982). There is no evidence of a dispute between Leibovitz and Bowery over Bowery's standing. And Bowery submitted an additional signed writing under which Leibovitz confirmed her intent and agreement that Bowery had standing to enforce and protect her copyrights. Doc. 33-13 at 2 (App. IV at 490).[3]

---

[3] While the "right to enforce or bring suit" in relation to a copyright is not a Section 106 right, this writing confirms the intent of the parties under the Agreement, which is that Bowery had the exclusive rights necessary to enforce and bring suit to enforce rights in the Photographs. And when construing the

*Imperial* involved a challenge to standing based on the alleged lack of a written transfer agreement, and the principle applies here as well – if Leibovitz and Bowery both agreed that Bowery held exclusive rights under the Agreement, it would be "unusual and unwarranted" to allow the infringer, Consequence, to invoke Section 501(b) to avoid this suit for copyright infringement. *Imperial Residential Design, Inc.,* 70 F.3d at 99; see also **CBS Broad., Inc. v. EchoStar Commc'ns Corp**., 2003 WL 27387389, at *6 (S.D. Fla. Apr. 1, 2003) ("The Court will not disturb such a transfer of rights where no dispute exists between the copyright holder and the licensee.").

Similarly, the Ninth Circuit concluded that an infringer could not invoke the "work for hire" doctrine to challenge a plaintiff's standing when there is no dispute between the company and artist about the issue. *Jules Jordan Video, Inc. v. 144942 Canada Inc*., 617 F.3d 1146, 1157 (9th Cir. 2010). That court found that the purpose of the "work for hire" doctrine is "to establish ownership of a work as between a commissioning party or employer on the one hand and the commissioned party or employee on the other." *Id.* Thus, "[i]t would be unusual and unwarranted to permit third parties ... to invoke [the 'work for hire' doctrine]

---

Agreement, the "goal" is to "effectuate the parties' intent." *BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 524 (11th Cir. 2017).

to avoid a suit for infringement when there is no dispute between the two potential owners, and both are plaintiffs to the lawsuit." *Id.* Here, Leibovitz and Bowery agree that Bowery held exclusive rights and could thus pursue the claims at issue. *See* Doc. 31-5 at 70 ¶1 (App. III at 218-19); Doc. 33-13 at 2 (App. IV at 490). Consequence, as a non-party to that agreement, lacks standing to challenge that agreement.

***

In light of the above, it is respectfully submitted that the district court erred by finding Bowery to lack standing.

### B. Leibovitz's request to intervene should have been granted

As a separate basis for reversal, the lower court erred by refusing Leibovitz's request to intervene. Leibovitz was entitled to intervene per the statute's clear text, which states that the court "shall" permit such an intervention. 17 U.S.C. § 501(b). Federal Rule of Civil Procedure 24(a)(1) states that a party has a right to intervene if it can demonstrate that it "is given an unconditional right to intervene by a federal statute." And, as noted, the Copyright Act states "that if an existing action implicates a copyright, courts **must** permit intervention by any party who claims an interest in the copyright." *Duthie v. Rin, Inc.,* 2022 WL 2199828, at *2 (C.D. Cal. Feb. 17, 2022) (emphasis added), *citing* 17 U.S.C. § 501(b) ("The court ... shall

permit the intervention, of any person having or claiming an interest in the copyright.").

Despite this clear directive, the district court denied the intervention because, inter alia, the deadline for amended pleadings had lapsed. *Great Bowery Inc.,* 2024 WL 3291101, at *1, fn. 1; Doc. 45 at 1 (App. VI at 624). This was error because Leibovitz held "an unconditional right to intervene under § 501(b) of the Act[.]" *Vestron, Inc. v. Home Box Off., Inc*., 1987 WL 123012, at *2 (C.D. Cal. Nov. 20, 1987).

We must "follow the text of the statute." *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P*., 595 U.S. 178, 184 (2022) (citation omitted). The "word 'shall' is ordinarily the language of command." *In re Tennyson*, 611 F.3d 873, 877 (11th Cir. 2010), *citing Alabama v. Bozeman*, 533 U.S. 146, 153, 121 S.Ct. 2079, 2085, 150 L.Ed.2d 188 (2001) (quotation omitted). And use of the word "shall" "normally creates an obligation impervious to judicial discretion." *Id.*, *quoting Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S.Ct. 956, 962, 140 L.Ed.2d 62 (1998) (citation omitted).

Other Circuits agree that the statutory use of the word "shall" sets forth a directive. *See, e.g.*, *Hennepin Cnty. v. Fed. Nat. Mortg. Ass'n*, 742 F.3d 818, 822 (8th Cir. 2014) ("We have determined that the use of "shall" in a statute makes what follows mandatory[.]"), *citing LeMay v. U.S. Postal Serv*., 450 F.3d 797, 799

(8th Cir.2006); *Firebaugh Canal Co. v. United States*, 203 F.3d 568, 573–74 (9th Cir. 2000) (The term "shall" is usually regarded as making a provision mandatory, and the rules of statutory construction presume that the term is used in its ordinary sense unless there is clear evidence to the contrary."), *citing Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 1166, 137 L.Ed.2d 281 (1997); *United States v. Kahn*, 5 F.4th 167, 174 (2d Cir. 2021) ("The word "shall," in a statute, indicates a command; what follows the word "shall" is "mandatory, not precatory."), *citing Mach Mining, LLC v. Equal Employment Opportunity Commission*, 575 U.S. 480, 486, 135 S. Ct. 1645, 191 L. Ed. 2d 607 (2015).

Despite this clear statutory directive, the Court refused Leibovitz's request to join the case which, notably, would have mooted the entire issue now on appeal. If, as the lower court found, only Leibovitz can bring the claims against Consequence – which is at a minimum arguable given that Leibovitz transferred to Bowery the exclusive right to distribute her work and authorize the distribution and display of her work – then Leibovitz had an interest in the copyright at issue and should have been allowed to join the case. The refusal to allow her intervention was error.

## IX.    CONCLUSION

This appeal should be granted. Bowery had standing to bring the copyright infringement claims at issue, Leibovitz should have been allowed to intervene, and Consequence lacked standing to challenge the Agreement. The Copyright Act's

text and intent were both contravened when the lower court deprived an artist's agency of the ability to enforce the artists' copyrights. The ruling should be reversed and this matter should be remanded.

Respectfully submitted,


Dated: October 10, 2024     By:     */s/ Scott Alan Burroughs*
                                     Scott Alan Burroughs, Esq.
                                     DONIGER / BURROUGHS
                                     *Attorneys for Plaintiff-Appellant*
                                     GREAT BOWERY, INC.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,**

**TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1.     **Type-Volume**

This document complies with the word limit of FRAP because, excluding the parts of the document exempted by FRAP 32(f), because  this document contains 7,956 words.

2.     **Typeface and Type-Style**

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

Respectfully submitted,

Dated: October 10, 2024         By:          */s/ Scott Alan Burroughs*
                                                          Scott Alan Burroughs, Esq.
                                                          DONIGER / BURROUGHS
                                                          *Attorneys for Plaintiff-Appellant*
                                                          Great Bowery, Inc.

# CERTIFICATE OF SERVICE

I certify that I electronically filed this OPENING BRIEF OF PLAINTIFF-APPELLANT with the United States Court of Appeals for the Eleventh Circuit via the Court's CM/ECF system on October 10, 2024, and that service will be made on counsel of record for all parties to this case through the Court's CM/ECF system.

Respectfully submitted,

Dated: October 10, 2024      By:      */s/ Scott Alan Burroughs*
Scott Alan Burroughs, Esq.
DONIGER / BURROUGHS
*Attorneys for Plaintiff-Appellant*
Great Bowery, Inc.