No. 24-12482

═══════════════════════════════════════

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

─────────────────

GREAT BOWERY INC.,

Plaintiff-Appellant,

v.

CONSEQUENCE SOUND LLC, and
CONSEQUENCE MEDIA GROUP INC.,

Defendants-Appellees.

─────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

─────────────────

**BRIEF OF APPELLEES**

C. CORY MAURO
*Florida Bar No. 384739*
*MAURO LAW P.A.*
*1001 Yamato Road, Suite 401*
*Boca Raton, Florida 33431*
*(t) 561.202.1992*
*(e) cory@maurolawfirm.com*
*(e) service@maurolawfirm.com*

ANDERSON J. DUFF
*DUFF LAW PLLC*
*353 Ocean Ave. Ste. 4E*
*Brooklyn, New York 11226*
*(t) 646.450.3607*
*(e) ajd@hoganduff.com*

No. 24-12482

*Great Bowery Inc. v. Consequence Sound LLC*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, counsel for Consequence Media LLC and Consequence Media Group Inc. certifies in addition to those persons identified in Plaintiff-Appellant's certificate of interested persons the following may have an interest in the outcome of this case:

1. Doniger / Burroughs

2. Duff Law PLLC

3. Higbee & Associates

4. Higbee, Melissa Ann

5. Mauro Law P.A.

6. Murray, Taryn R.

7. Reinhart, Hon. Bruce E., U.S. Magistrate Judge

Defendants-Appellees further certify that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees Consequence Sound and Consequence Media Group believe that oral argument would assist the Court's decisional process in this case of significant importance to all those in the Eleventh Circuit and beyond who would be affected by agents like Appellant Great Bowery if they are given standing to file lawsuits on behalf of their clients.

# TABLE OF CONTENTS

**SUMMARY**........................................................................................................1

**ARGUMENT** ....................................................................................................4

  I.   Great Bowery Does Not Have Standing to Bring this Action.............5

     A.  *The Authorization Letter Expressly States it Does Not Transfer Any Exclusive Right in the Copyright for the Images to Plaintiff*......................................10

     B.  *The Artist Agreement Does Not Confer Standing on Plaintiff*..................................12

     C.  *AL Studio's Agreements with Condé Nast Prevent Great Bowery From Receiving an Exclusive License of Any § 106 Rights in the Images*..................15

  II.  Considering Substantially Similar Facts, the District of Oregon Held that Plaintiff Lacked Standing to Bring a Copyright Infringement Lawsuit ..............................................................17

  III.  Leibovitz Did Not Move to Intervene and Great Bowery's Motion to Amend was Properly Denied ..................................................19

**CONCLUSION**................................................................................................**20**

# TABLE OF AUTHORITIES

## C<span>ASES</span>

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
    944 F.2d 971, 980 (2d Cir.1991) ---------------------------------------------- 9

*Creative Photographers, Inc. v. Julie Torres Art, LLC*,
    1:22-CV-00655-JPB, 2023 WL 2482962, at *6
    (N.D. Ga. Mar. 13, 2023)------------------------------------------- 5, 6, 13, 15

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
    93 F.3d 774, 780 (Fed.Cir.1996) --------------------------------------------- 8

*Great Bowery, Inc. v. Cascade Digital Media LLC*,
    No. 6:20-cv-00009-MK, 2021 WL 3716654, at *2 (D. Or. July 15, 2021),
    *report and recommendation adopted,* No. 6:20-CV-00009-MK, 2022 WL
    939871 (D. Or. Mar. 29, 2022) -------------------------------------- 11, 18, 19

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*,
    70 F.3d 96, 99 (11th Cir.1995) ---------------------------------------------- 8

*John Wiley & Sons, Inc. v. DRK Photo*,
    998 F.Supp.2d 262, 280–81 (S.D.N.Y. 2014) ---------------------------------- 9

*Lorentz v. Sunshine Health Prods., Inc.*,
    2010 WL 3733986, at *8 (S.D. Fla. Aug. 27, 2010)----------------------------- 9

*Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*,
    679 F.Supp. 1564 (N.D. Ga. 1987) ------------------------------------------ 15

*Prather v. Neva Paperbacks, Inc.*,
    410 F.2d 698, 700 (5th Cir.1969) -------------------------------------------- 9

*Pro. LED Lighting, Ltd. v. AAdyn Tech., LLC*,
    88 F.Supp.3d 1356, 1369 (S.D. Fla. 2015)-------------------------------- passim

*Righthaven LLC v. Democratic Underground, LLC*,
    791 F.Supp.2d 968, 976 (D. Nev. 2011) -------------------------------------- 9

*Saregama India Ltd. v. Mosley*,
    635 F.3d 1284, 1290–91 (11th Cir.2011) ------------------------------------6, 8

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881, 884, 890 (9th Cir.2005) --------------------------------------8, 9

*Triple Tee Golf, Inc. v. Nike, Inc.*,
    No. 4:04-CV-302-A,
    2007 WL 4260489, at *22 (N.D. Tex. Aug. 10, 2007) -------------------------8

*Utopia Provider Sys., Inc. v. Pro–Med Clinical Sys., L.L.C.*,
    No. 07-60654-CIV, 2008 WL 4938420, at *1 (S.D.Fla. Nov. 18, 2008) -----7

*Viesti Assocs., Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*,
    No. 12-cv-00668, 2015 WL 585806, at *1 (D. Colo. Feb. 11, 2015) ---- 5, 14

*World Thrust Films Inc. v. Int'l Family Entm't Inc.*,
    No. 93-0681-CIV, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996) ---------9

## STATUTES

17 U.S.C. § 101-------------------------------------------------------------------------7

17 U.S.C. § 106------------------------------------------------------------------- 6, 7, 13

17 U.S.C. § 204(a) ------------------------------------------------------------------7

17 U.S.C. § 501(b) -------------------------------------------------------------------5

**SUMMARY**

Appellees Consequence Sound LLC and Consequence Media Group
(referred to collectively herein as "Consequence"), by and through their attorneys,
Duff Law PLLC, seek an affirmation of Judge Rosenberg's reasoned opinion
granting summary judgment against Appellant Great Bowery Inc. d/b/a Trunk
Archive ("Great Bowery") and dismissing Great Bowery's claim with prejudice
pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.

This case is not about the copyright infringement alleged in the action
dismissed by Judge Rosenberg in the lower court. If it were, Annie Leibovitz
would have filed her own complaint long ago. Great Bowery appeals Judge
Rosenberg's sound opinion because Great Bowery acts as an agent for artists like
Leibovitz and convincing the Eleventh Circuit to adopt the unsound if perhaps well
intentioned reasoning of a Ninth Circuit decision that is not even followed by
district courts within the Ninth Circuit would give Great Bowery and other agents
like it the ability to file lawsuits without involving their clients who are the actual
rights holders. It is not difficult to grant an exclusive copyright right to a third
party, but Leibovitz did not do so here. Great Bowery tells the Court throughout its
brief that Judge Rosenberg's grant of summary judgment is ruinous for Leibovitz,
leaving her without recourse while subverting the goal of the Copyright Act. Great
Bowery does not acknowledge that Leibovitz could file her own lawsuit at any

time and indeed was the proper plaintiff when Great Bowery filed its complaint. Instead, Great Bowery avails itself of more judicial resources to advance three primary arguments: (1) Judge Rosenberg "misconstrued what constitutes a 'legal or beneficial owner of an exclusive right under copyright' as set forth in 17 U.S.C. § 501(b)"; (2) Judge Rosenberg "refused to 'permit the intervention' of Leibovitz in the case as is required by 17 U.S.C. § 501(b)"; and (3) Consequence lacked standing to "challenge an agreement transferring copyrights when the parties to the transfer agreement are in accord[.]" (Appellant Br., Dkt. 15 at 11.)

In an argument not advanced prior to this appeal, is Great Bowery asserts that it is a beneficial owner of rights under the Copyright Act. (Appellant Br., Dkt. 15 at 34-39.) Although the Copyright Act does not define "beneficial owner," longstanding precedent, a leading copyright treatise, and the legislative history all demonstrate that Great Bowery is not a beneficial owner. Great Bowery's citations to uses of the phrase "beneficial owner" in cases outside of the relevant copyright jurisprudence confuse the issue. (Appellant Br., Dkt. 15 at 37.) Moreover, Great Bowery's focus on whether it is or is not a beneficial owner itself confuses the issue. What matters for the purpose of standing is whether Great Bowery owned exclusive rights to any of the six exclusive rights identified in § 106 of the Copyright Act. To have standing to bring a copyright infringement lawsuit, a plaintiff must have an exclusive right to at least one of the six exclusive copyright

rights identified in § 106 of the Copyright Act. Great Bowery cannot import the meaning of "beneficial owner" from a discussion of the Exchange Act to abrogate the plain meaning of the Copyright Act's standing requirement. Leibovitz did not grant any exclusive rights in the Photographs to Great Bowery and the limited rights she did grant to Great Bowery were not any of the six exclusive rights unambiguously identified in § 106 of the Copyright Act. Because Leibovitz did not grant Great Bowery any exclusive right to one or more of the six rights identified in § 106 of the Copyright Act, Great Bowery does not have standing to bring this action.

Great Bowery next argues that Judge Rosenberg erred by refusing to "'permit the intervention' of Leibovitz in the case as is required by 17 U.S.C. § 501(b)[.]" (Appellant Br., Dkt. 15 at 15.) No motion to intervene was filed with the district court. Great Bowery filed a motion for leave to amend its complaint pursuant to Fed. R. Civ. P. 15 that would have added Annie Leibovitz and her studio as plaintiffs. (Dkt. 27, App. at 81.) Great Bowery's motion for leave to amend does not address any of the considerations identified in Fed. R. Civ. P. 24, which governs intervention and is raised by Great Bowery for the first time on appeal. Even were Great Bowery's motion for leave to amend construed as a third-party motion to intervene, Judge Rosenberg's decision does not impact the rights

of the two would-be interveners who remain free to file their own actions against Consequence.

Finally, Great Bowery's assertion that Consequence cannot challenge the transfer agreement between Leibovitz and Great Bowery fails for several reasons. (Appellant Br., Dkt. 15 at 39-41.) Consequence does not challenge the agreement between Leibovitz and Great Bowery. Consequence merely points out that the agreement does not give Great Bowery any exclusive right to any of the six rights identified in § 106 of the Copyright Act. The cases cited by Great Bowery consider cases where an oral transfer of exclusive rights was made prior to an infringing act but only ratified by a writing after the infringing act. Great Bowery makes no such claim here. Instead of pointing to a written exclusive grant of one of the § 106 rights from Leibovitz to Great Bowery and claiming that the writing ratified a long-standing agreement between the parties, Great Bowery points to two writings that demonstrate that it is not the holder of any of the exclusive rights listed in § 106 of the Copyright Act and therefore does not have standing. Consequence does not challenge the validity of these writings, it reads them.

## ARGUMENT

Great Bowery asserts a claim for copyright infringement pursuant to 17 U.S.C. § 101 *et seq.* (Compl., Dkt. 1 at 6, App. at 15.) Great Bowery alleges that Consequence infringed upon the copyright in three sets of photographs taken by

Annie Leibovitz ("Leibovitz") and published by *Vanity Fair* in its June 2015, June 2017, and June 2019 issues (the "Images"). (Compl., Dkt. 1 at 3-4, App. at 12-13.) Although not acknowledged by Great Bowery, Leibovitz produced these photographs working under an agreement with Conde Nast. (Statement Material Facts ("SMF"), Dkt. 33-1 at 2, App. at 397-460.) Only the legal or beneficial owner of an exclusive right under a copyright have standing to sue for a violation of that right. The record demonstrates that Great Bowery does not own any exclusive right under § 106 of the Copyright Act for any of the Images, so Great Bowery does not have standing to bring this action. Judge Rosenberg's clearly delineated reasoning should be affirmed and Great Bowery's appeal should be denied.

## I.       Great Bowery Does Not Have Standing to Bring this Action

"Under the Copyright Act, only the 'legal or beneficial owner of an exclusive right under a copyright' may 'institute an action for any infringement of that particular right while he or she is the owner of it.'" *Pro. LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F.Supp.3d 1356, 1369 (S.D. Fla. 2015) (quoting 17 U.S.C. § 501(b)) (citation omitted); *see also Creative Photographers, Inc. v. Julie Torres Art, LLC*, 1:22-CV-00655-JPB, 2023 WL 2482962, at *6 (N.D. Ga. Mar. 13, 2023) (citing *Viesti Assocs., Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. 12-cv-00668, 2015 WL 585806, at *1 (D. Colo. Feb. 11, 2015)). "Accordingly, 'only the

legal or beneficial owner of an "exclusive right" has standing to bring a copyright infringement action' under the Copyright Act." *Pro. LED Lighting*, 88 F.Supp.3d at 1369 (quoting *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290–91 (11th Cir. 2011)); *see also Creative Photographers*, 2023 WL 2482962, at *3 (citation omitted). The Copyright Act identifies six "exclusive rights" provided by a copyright, namely, the rights to:

(1) reproduce the copyrighted work;

(2) prepare derivative works based on the copyrighted work;

(3) distribute copies or phonorecords of the copyrighted work;

(4) perform the copyrighted work publicly;

(5) display the copyrighted work publicly; and

(6) perform the copyrighted work publicly.

17 U.S.C. § 106. Great Bowery must demonstrate that it is the legal or beneficial owner of one of these rights to have standing to bring this action.

Each of the three federal copyright registrations cited in the Complaint identifies Annie Leibovitz as the author and claimant of the copyright in the Images. (Dkt. 33-3 at 2-7, App. at 167-168; Dkt. 33-4 at 2-5, App. at 192-195; Dkt. 33-5 at 2-3, App. at 215-216.) Great Bowery is not mentioned in any of the

copyright registrations cited in the Complaint. (Dkt. 33-3 at 2-7, App. at 167-168; Dkt. 33-4 at 2-5, App. at 192-195; Dkt. 33-5 at 2-3, App. at 215-216.) Throughout the Complaint, Great Bowery refers to the Images as "Leibovitz' photographs" that "Leibovitz registered" with the Copyright Office. (Compl., Dkt. 1 at 3-4, App. at 12-13.) Neither Leibovitz nor her studio transferred any "exclusive right" identified in § 106 of the Copyright Act for any of the Images to Great Bowery, so Great Bowery does not have standing to bring this lawsuit.

"A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance . . . of the exclusive rights comprised in a copyright . . . not including a nonexclusive license." 17 U.S.C. § 101. "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." *Pro. LED Lighting*, 88 F.Supp.3d at 1369 (quoting 17 U.S.C. § 204(a)).

"[T]he note or memorandum required by section 204 need not be contemporaneous with the transfer of copyright ownership." *Pro. LED Lighting*, 88 F.Supp.3d at 1369 (quoting *Utopia Provider Sys., Inc. v. Pro–Med Clinical Sys., L.L.C.*, No. 07-60654-CIV, 2008 WL 4938420, at *1 (S.D. Fla. Nov. 18, 2008). "'[S]ection 204(a) can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer.'" *Id.* (quoting *Imperial Residential*

*Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir.1995) (citation omitted)). But while an oral transfer may later be ratified by a writing, "[a] *nunc pro tunc* assignment executed after litigation is commenced 'cannot retroactively solve the standing problem that existed at the time the action was filed.'" *Pro. LED Lighting*, 88 F.Supp.3d at 1370 (quoting *Triple Tee Golf, Inc. v. Nike, Inc.*, No. 4:04-CV-302-A, 2007 WL 4260489, at *22 (N.D. Tex. Aug. 10, 2007)) (citing *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996); *Imperial Residential*, 70 F.3d at 98–9 (affirming dismissal of suit brought on the basis that standing could be conferred by post-litigation memorialization of pre-litigation assignment)); *see also Saregama India*, 635 F.3d at 1286 (affirming grant of summary judgment for defendants because plaintiff lacked statutory standing at time of action).

"[T]he assignment of a right to sue does not alone convey 'exclusive' rights for purposes of standing under the Copyright Act." *Pro. LED Lighting*, 88 F.Supp.3d at 1369 (citing *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884, 890 (9th Cir. 2005) ("The right to sue for an accrued claim for infringement is not an exclusive right under [17 U.S.C.] § 106" such that "[t]he bare assignment of an accrued cause of action" does not satisfy the standing requirement of section 501(b))). "[S]ection 501(b) of the Copyright Act does not permit the copyright owner to retain the copyright, but convey the mere right to sue." *Id.* (citing *ABKCO*

*Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir.1991) ("[T]he Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf.")). "Put another way, a mere right to sue is not an exclusive right under a copyright, and is insufficient to bring an infringement action." *Id.* at 1369-70 (citing *Righthaven LLC v. Democratic Underground, LLC*, 791 F.Supp.2d 968, 976 (D. Nev. 2011) (citing *Silvers*, 402 F.3d at 890; *John Wiley & Sons, Inc. v. DRK Photo*, 998 F.Supp.2d 262, 280–81 (S.D.N.Y. 2014) ("Where . . . an agreement transfers nothing more than a bare right to sue, it cannot be the basis for standing under the Copyright Act.") (quotation omitted)).

Furthermore, "the copyright owner or exclusive licensee must have such status at the time of the alleged infringement." *Pro. LED Lighting*, 88 F.Supp.3d at 1370 (quoting *World Thrust Films Inc. v. Int'l Family Entm't Inc.*, No. 93-0681-CIV, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996)) (citing *Lorentz v. Sunshine Health Prods., Inc.*, 2010 WL 3733986, at *8 (S.D. Fla. Aug. 27, 2010) ("If Plaintiff did not have the right to sue for accrued infringements at the time she filed this action, she lacks standing to maintain this action.") (citing *Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698, 700 (5th Cir.1969))).

Great Bowery must show that it acquired an exclusive right to one of the six rights identified in § 106 of the Copyright Act through a written conveyance, or a

document memorializing that conveyance, that is signed by Leibovitz, her studio, or a duly authorized agent. No such signed conveyance exists.

Great Bowery relies upon two documents to argue that it has standing to bring this action: (1) a November 12, 2014 agreement ("Artist Agreement") not signed by Great Bowery or Leibovitz; and a June 12, 2018 letter signed by Leibovitz and addressed "To Whom It May Concern" ("Authorization Letter") (Dkt. 33-13 at 2, App. at 490; Dkt. 33-15, App. at 218.) Neither document transfers an "exclusive right" in the copyright for any of the Images to Plaintiff.

Great Bowery argues that Consequence may not "challenge [Great] Bowery's standing" by challenging the effect of the agreements between Great Bowery and Leibovitz because neither Great Bowery nor Leibovitz "disputes the transfer's effect." (Appellant Br., Dkt. 15 at 39.) The incurable problem with Great Bowery's argument is that neither of the writings it puts forward as transfer agreements transfer any exclusive copyright rights to Great Bowery. Great Bowery and Leibovitz may be in agreement that the two documents give Great Bowery the right to sue on Leibovitz's behalf, but the right to sue for copyright infringement does not confer standing.

### A. The Authorization Letter Expressly States it Does Not Transfer Any Exclusive Right in the Copyright for the Images to Plaintiff

Instead of transferring any exclusive right to Plaintiff, the Authorization Letter expressly states the opposite, namely, that Leibovitz is "the holder of all

rights, title and interest in and to the copyrighted works . . . ." (Dkt. 33-13 at 2, App. at 490.) The Authorization Letter is signed by Leibovitz and dated June 12, 2018. (Dkt. 33-13 at 2, App. at 490.) It does not identify any of the copyrighted works referenced therein. (Dkt. 33-13 at 2, App. at 490.)

In a recent case brought by Plaintiff in the District of Oregon involving different photographs created for Condé Nast under the same agreements at issue here, Plaintiff produced the Authorization Letter. (Dkt. 33-2 at 3; Dkt. 33-12 at 27, App. at 487.) The District of Oregon held that the Authorization Letter "does not convey a right in any copyrighted works to Plaintiff." *Great Bowery, Inc. v. Cascade Digital Media LLC*, No. 6:20-cv-00009-MK, 2021 WL 3716654, at *2 (D. Or. July 15, 2021), *report and recommendation adopted,* No. 6:20-CV-00009-MK, 2022 WL 939871 (D. Or. Mar. 29, 2022). The District of Oregon further held that the Authorization Letter "does not provide Plaintiff with standing to bring" the action but "establishes, instead, that Plaintiff is not a holder of any exclusive right to any of Leibovitz's copyrighted works." *Id.* at *3. Judge Rosenberg agreed and held that, under the Authorization Letter, Great Bowery "could be, at best, a non-exclusive licensee." (Dkt. 45 at 3, App. at 626.)

Because the Authorization Letter undermines Plaintiff's claim to an exclusive right in any of the Images, Plaintiff does not have standing to bring this action.

**B.      The Artist Agreement Does Not Confer Standing on Plaintiff**

The Artist Agreement is not a valid transfer of copyright ownership. It is not signed by Plaintiff or Leibovitz. (Dkt. 33-15, App. at 218.) Plaintiff has not identified the person who did sign the Artist Agreement, and the record does not demonstrate that they signed the Artist Agreement as Leibovitz's duly authorized agent.

Assuming *arguendo* that the Artist Agreement was properly executed, the Artist Agreement still fails to grant an exclusive right to Plaintiff. Despite using the word "exclusive," the terms of the Artist Agreement demonstrate that no exclusive right identified in § 106 of the Copyright Act is conveyed to Plaintiff therein. The relevant portion of the Artist Agreement states:

> Subject to the terms and conditions of this Agreement, Artist hereby grants to [Plaintiff] the exclusive worldwide right to license, market, and promote the Licensed Images (as defined below) for all uses in any and all media. Notwithstanding the foregoing, nothing contained herein shall restrict Artist's right to collaborate with or deliver any Licensed Images to Robert Pledge and/or Contact Press Images for use in special projects or other endeavors Artist deems of interest. Artist shall make best efforts to notify [Plaintiff] in advance if the use of a Licensed Image by Robert Pledge and/or Contact Press Images may conflict with the rights granted herein.

(Dkt. 33-15, App. at 218.) The language of the grant plainly demonstrates that it is not an exclusive license or an assignment because Leibovitz retains the right to "deliver any Licensed Images" to two named third parties "for use in special

projects" as well as the right to use the Licensed Images in any "other endeavors Artist deems of interest." (Dkt. 33-15, App. at 218.)

In *Creative Photographers*, the Northern District of Georgia found that an agreement containing the following language did not confer statutory standing on a plaintiff asserting a copyright infringement claim:

> You retain [Plaintiff] as your exclusive agent to sell, syndicate, license, market or otherwise distribute any and all celebrity/portrait photographs and related video portraits, submitted to us by you and accepted by us for exploitation for sale or syndication during the term of this Agreement (the "Accepted Images"). *You must be the sole owner of the copyright for all such photographs* and may not offer any celebrity/portrait photographs for sale or syndication to or through any other agent, representative, agency, person or entity during the Term of this Agreement.

2023 WL 2482962, at *4. The court recognized that because "[t]he italicized language plainly reserves ownership of the copyright in [a non-party to the lawsuit]" the plaintiff could not be the copyright owner, so "the only avenue to standing is for Plaintiff to be an exclusive licensee." *Id.* at *4. The court found that the language recited above made the plaintiff the copyright holder's agent but did not convey to the plaintiff an exclusive license of any of the § 106 rights. *Id.* at *5.

In *McGraw-Hill*, the court recognized that an authorized agent lacked standing to bring a copyright infringement lawsuit because the agreements in question did not "restrict[] the photographer[ rightsholders] from licensing the

same images on their own behalf or prosecuting all other infringements," which meant that although the agreement appointed the plaintiff as the rightsholders "exclusive agent and representative," the plaintiff had not received an exclusive right but rather a nonexclusive license and therefore did not have standing to bring a copyright infringement claim. 2015 WL 585806, at *6.

In this case, the Artist Agreement not only does not restrict Leibovitz from licensing the Images or prosecuting infringements of the same, it expressly allows Leibovitz to use the Images for any "endeavors Artist deems of interest[.]" (Dkt. 33-15, App. at 218.) Leibovitz need only "make best efforts to notify [Plaintiff] in advance" if Leibovitz's independent use or licensing of the Images "conflict with the rights" granted to Plaintiff. (Dkt. 33-15, App. at 218.) The Artist Agreement acknowledges that Leibovitz, and third parties she grants rights to, may use the Images in a manner that conflicts with the rights granted to Great Bowery. (Dkt. 33-15, App. at 218.) Any license granted to Great Bowery by the Artist Agreement is therefore necessarily nonexclusive and cannot confer standing on Great Bowery.

If the Artist Agreement did grant an exclusive license to Great Bowery, which it does not, courts within the Eleventh Circuit recognize that agreements based on similar language make parties "an exclusive licensing agent" that lacks standing to sue for copyright infringement because "the exclusive right to authorize *others* to use the copyright at issue . . . is not a § 106 right" and is instead derived

solely from the licensing contract. *Creative Photographers*, 2023 WL 2482962, at

*4 (citing *Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679

F.Supp. 1564 (N.D. Ga. 1987)).

In *Original Appalachian Artworks*, the court considered an agreement that

granted the plaintiff "the exclusive worldwide rights to license the designs,

trademarks, and tradenames of [the rightsholder] in the areas of subsidiary, literary,

and audiovisual rights." 679 F.Supp. at 1568. The court found that although the

agreement gave the plaintiff "the exclusive right to authorize third parties to

prepare and reproduce materials in literary form based on" the rightsholder's

designs, the "exclusive worldwide right" to license the rightsholder's designs did

not establish standing. *Original Appalachian Artworks*, 679 F.Supp. at 1568.

### C. AL Studio's Agreements with Condé Nast Prevent Great Bowery From Receiving an Exclusive License of Any § 106 Rights in the Images

The Images cited in Great Bowery's Complaint were created under

agreements between AL Studio, LLC ("AL Studio") and Condé Nast (the "Condé

Agreements"). (Dkt. 33-7 at 2-27; Dkt. 33-8 at 2-20; Dkt. 33-9 at 2-19; Dkt. 33-10

at 2-18; App. at 397-460.) Each of the Condé Agreements states that "[a]ll rights

with regard to the [Images] not expressly granted herein are retained by" AL

Studio. (Dkt. 33-7 at 12, App. at 407; Dkt. 33-8 at 11, App. at 11; Dkt. 33-9 at 11;

Dkt. 33-10 at 11, App. at 453.)  Neither the Artist Agreement nor the Authorization

Letter mention AL Studio. (Dkt. 33-13 at 2, App. at 490; Dkt. 33-15, App. at 218.) There is no written transfer in the record of any rights in the Images from AL Studio to Leibovitz or Great Bowery. (Dkt. 33-2 at 3, App. at 369.)

Each of the Condé Agreements grants Condé Nast certain exclusive rights in the Images for a period of time as well as nonexclusive rights in each Image for the duration of the copyright. (Dkt. 33-7 at 2, 6-12; Dkt. 33-8 at 2, 5-11; Dkt. 33-9 at 2, 5-11; Dkt. 33-10 at 2, 5-11.) Each of the Condé Agreements states that AL Studio:

> will not allow any of the [Images] that are Published in a Publication, or any Works similar to such [Images], to be used for any commercial, merchandising, or advertising purpose . . . unless [AL Studio] first obtains [Condé Nast's] written consent, which [Condé Nast] may withhold in its sole discretion. This requirement will continue to apply . . . as long as [AL Studio] and [Condé Nast] still have a professional contractual relationship.

(Dkt. 33-7 at 13, App. at 408; Dkt. 33-8 at 12-13, App. at 434-435; Dkt. 33-9 at 13; Dkt. 33-10 at 12-13, App. at 454-455.) The most recent of the Condé Agreements was in effect until April 30, 2024. (Dkt. 33-10 at 2, App. at 444.) Because Condé Nast may refuse to allow use of the Images, Great Bowery could not have received an exclusive right to license or use the Images via the Artist Agreement or Authorization Letter.

Each Condé Agreement further states that AL Studio:

> grants [Condé Nast], for the full term of copyright, the
> non-exclusive right to Publish, print, re-Publish, and
> reprint the [Images] (including in anthologies as
> permitted below), the unrestricted right to use any cover
> containing any [Image](s) as a cover (i.e., in the original
> cover layout) for any purpose at any time, the right to
> make and authorize the making of reprints or stand-alone
> copies of the article feature including any [Image](s) for
> any purpose, the right to authorize the use of any
> [Image](s) in the original layout shown in the applicable
> Publication as set dressing or props in movies, television
> shows, and other productions, and in addition, the right to
> use any [Image](s) . . . in Publishing, promoting,
> advertising and publicizing the Publication(s) in which
> the [Image](s) appear.

(Dkt. 33-7 at 10, App. at 405; Dkt. 33-8 at 10, App. at 432; Dkt. 33-9 at 10; Dkt. 33-10 at 9, App. at 451.) Because AL Studio granted Condé Nast the nonexclusive right to publish and print each of the Images as well as the "unrestricted right" to use each of the Images as they appeared in Condé Nast's publications "for any purpose at any time" for the "full term of the copyright," Plaintiff could not have received an exclusive license to the Images. Any license granted to Plaintiff would necessarily be nonexclusive because it would coexist with Condé Nast's rights. Because a holder of a nonexclusive license does not have standing to bring an action for copyright infringement, Plaintiff does not have standing.

## II.    Considering Substantially Similar Facts, the District of Oregon Held that Plaintiff Lacked Standing to Bring a Copyright Infringement Lawsuit

On January 2, 2020, Great Bowery filed a complaint asserting a claim for copyright infringement against a defendant in the District of Oregon (the "Oregon Action"). (Dkt. 33-14 at 2-9, 492-499.) The complaint in that case alleged that the defendant infringed upon the copyright in two photographs taken by Leibovitz for the June 2015 issue of *Vanity Fair* magazine. (Dkt. 33-14 at 5-8, App. at 495-498.) In the Oregon Action, Plaintiff produced three documents concerning the rights in two photographs created by Leibovitz for Condé Nast: (1) the same Artist Agreement produced to Defendants in this case; (2) the same Authorization Letter produced to Defendants in this case; and (3) the Condé Agreement that governed Leibovitz's creation of photographs for the June 2015 issue of *Vanity Fair* magazine. (Dkt. 33-2, App. at 369.)

The court held that the Authorization Letter "does not convey a right in any copyrighted works to Plaintiff" and "establishes, instead, that Plaintiff is not a holder of any exclusive right to any of Leibovitz's copyrighted works." *Id.* at *3. *Great Bowery, Inc. v. Cascade Digital Media LLC*, No. 6:20-cv-00009-MK, 2021 WL 3716654, at *2-3 (D. Or. July 15, 2021), *report and recommendation adopted,* No. 6:20-CV-00009-MK, 2022 WL 939871 (D. Or. Mar. 29, 2022).

Considering the Artist Agreement, the District of Oregon held that, because the Artist Agreement governed "those images provided to [Plaintiff] by Artist or Artist's authorized agent" and Plaintiff did not submit any evidence showing that

Leibovitz had provided the relevant images to Plaintiff, the Artist Agreement did not provide Plaintiff with standing to bring a nearly identical lawsuit. *Id.* at *2. In the present case, Plaintiff did not produce any written communications showing that Leibovitz provided the Images to Plaintiff.

## III. Leibovitz Did Not Move to Intervene and Great Bowery's Motion to Amend was Properly Denied

In its opening brief, Great Bowery argues that Judge Rosenberg's sound decision should be overturned because "Leibovitz was entitled to intervene per the statute's clear text" stating that "the Copyright Act states 'that if an existing action implicates a copyright, courts **must** permit intervention by any party who claims an interest in the copyright." (Appellant Br., Dkt. 15 at 41.) Leibovitz, however, never moved to intervene as allowed by Fed. R. Civ. P. 24(a). Instead, Great Bowery moved for leave to file an amended complaint to add Leibovitz as a party pursuant to Fed. R. Civ. P. 15. (Dkt. 27 at 1-6, App. at 81-85.) Judge Rosenberg denied Great Bowery's motion because Great Bowery filed it on May 6, 2024, the deadline for joinder of additional parties was September 25, 2023, discovery had closed on April 12, 2024, and the deadline for dispositive motions was May 10, 2024. (Dkt. 29, App. at 99.)

Had Leibovitz moved to intervene, Rule 24 would have required her motion to "be served on the parties as provided in Rule 5." Fed. R. Civ. P. 24(a). Furthermore, a motion to intervene "must state the grounds for intervention and be

accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(a). Rule 24(a)(1) also requires that a motion to intervene be timely made. In this case, Leibovitz did not make a motion to intervene and even Great Bowery's motion for leave to amend was not timely.

## CONCLUSION

The Copyright Act does not permit copyright holders to select third parties to bring lawsuits on their behalf. A plaintiff asserting a claim for copyright infringement must own an exclusive right protected by the Copyright Act that the defendant has infringed upon. In this case, any rights owned by Great Bowery are nonexclusive in view of the rights granted or reserved by at least Condé Nast, AL Studio, and Leibovitz. Great Bowery has known since at least July 15, 2021 that standing would be an issue in a copyright infringement lawsuit based on rights purportedly granted by the Authorization Letter, Artist Agreement, and the Condé Agreements and chose to file this lawsuit without any new grant of rights. Judge Rosenberg's decision is sound and should not be disturbed.

Date: New York, New York
     December 18, 2024

Respectfully submitted,

By:     /Anderson   J. Duff/
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Anderson J. Duff (*pro hac vice*)
DUFF LAW PLLC
353 Ocean Ave. Ste. 4E
Brooklyn, New York 11226
(t) 646.450.3607
(e) ajd@hoganduff.com

C. Cory Mauro
Florida Bar No. 384739
MAURO LAW P.A.
1001 Yamato Road, Suite 401
Boca Raton, Florida 33431
(t) 561.202.1992
(e) cory@maurolawfirm.com
(e) service@maurolawfirm.com

*Attorneys for Appellees*
*Consequence Sound LLC and*
*Consequence Media Group*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the

United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system

on December 18, 2024. Participants in this case are registered CM/ECF users and service will be

accomplished by the appellate CM/ECF system.

Dated: December 18, 2024.                    By:    /Anderson  J. Duff/
                                                     Anderson J. Duff

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 5755 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

 /Anderson J. Duff/
Anderson J. Duff